The first case on the calendar is Moynihan v. PBA, on Re. New York City Policing. Morning, your honors. I'm going to divide the issues here, if I can, into two, whether my client has a cognizable interest relating to the subject of the lawsuit and whether that interest is adequately represented by the city defendants. And I'm also going to subdivide that first issue into whether the interest we rely on is inherently cognizable, and then, assuming it's not inherently incognizable, is it premature? One of those is an issue that's not going to be cognizable, as the district court thought, until there's a proposed settlement or a proposed decree. So the first question is whether the PBA and its members have an inherent cognizable interest, a direct, substantial, and legally protected interest in these cases. That seems to me, respectfully, an easy question. The cases raise the issue of what police officers may do in confronting protests, which are mostly, but only mostly, peaceful. We stress one aspect of that issue, because it brings it out very starkly, whether and under what circumstances police officers can wear protective equipment, like safety helmets or even Kevlar vests. Now, I can understand an argument that a particular situation doesn't justify the use of that sort of equipment, and we're happy to litigate that. I just don't see the argument that officers have no cognizable interest in whether they can wear protective gear. And that's why I say it's an easy question. We've experienced some frustration in this case, because for us, the first and most basic interest we're trying to protect is officer safety. We made that very clear in our moving papers. Mr. Alejandro's moving affidavit at page 866.8 of the record is all about officer safety. It includes a photograph of a safety helmet with a big gash in it that was caused by a rock during the summer 2020 protests. So we talk about safety as much as we can. And does it matter whether the union has a collective bargaining right over the use of safety equipment? Or are you saying just whenever it implicates officer safety, the officers and therefore the union automatically have an interest? The latter, the latter, Your Honor. You don't need a collective bargaining right to have an interest in your own safety. To me, it's like the Sierra Club has a cognizable, or its members have a cognizable interest in being able to look at attractive scenery. That's, they don't need to, they don't do any collective bargaining. But in this case, is there a connection between the equipment and the collective bargaining agreement? Yes, there is. The administrative code specifically carves out officer safety as an area that can be collectively bargained, even in areas that are otherwise reserved as management prerogatives. But it really doesn't matter. If we were decertified as the bargaining agency, we'd still have the same cognizable interest just in keeping people safe. If the Court contemplates that you might and indeed you might successfully renew your motion when the collective bargaining interests are involved, but you said that that would only be at the remedy stage. Yes. I think the Court made an error, Your Honor, in saying that first we're going to decide liability, and then we'll decide whether you have a cognizable interest. Our cognizable interest is in litigating liability. We are, we want to say, no, we're not violating anybody's constitutional rights. This is, maybe we're wrong, maybe we're right. But we have a cognizable interest in saying it, in saying that we're entitled to wear safety helmets under these, what we find, very dangerous circumstances. Why isn't there adequate representation? Because you know many of the defendants, they may be members of the union, probably are, but they certainly are police officers. So they have the same interest in being safe as all your members. Well, the, I think the real question is whether the city is an adequate representative. Obviously, the senior police officials are going to, are part of the city government. To me, the question is whether anyone really thinks that the city of New York, Mayor de Blasio or any other mayor, is going to litigate this case with a kind of single-minded focus on police interests that the union has. And I just don't think that's realistically possible. And I would say he even shouldn't do it. Well, what about Judge Jacobs' point that there also are individual police officers who are litigating it? And why aren't their interests aligned with the interests of the union? I think there's, I think there's some confusion there, Your Honor. We're not trying to intervene to protect the individual police officers. Our motion to intervene is directed at the injunctive relief, the so-called reforms that the plaintiffs are seeking. The, no, yeah, the... But do you not want to intervene in the suits in which there are individual police officer defendants? Well, the presence of an individual police officer defendant doesn't, doesn't make us back away from the case. But it's not our purpose to protect that particular member. I know, I know that. I understand that. I'm asking, assuming you are representing the police officers who are not parties to the case. Yes. Why aren't the interests of those police officers represented by the police officers who are parties to the case? Because the police officers who are parties to the case are basically worried about being held in damages for specific incidents. The union and its members at large are worried about the question of these so-called reforms that they think will endanger their safety. So you're saying because they have individual liability at stake, their interests are going to be toward avoiding that liability and perhaps to settle, and it's not necessarily going to be with a view toward the policy, department-wide policy-type issues that you're concerned with. Exactly, Your Honor. Exactly. The, did the court say that you might be permitted to intervene when collective bargaining rights become at stake, but that the only rights you could then assert would be under the collective bargaining agreement and that you would not be able to assert reputational and safety interests at that juncture? I think that is what the court said, Your Honor. I'm not entirely sure, but if she said it, she's wrong. We should be allowed to assert reputational and safety interests, not just collective bargaining interests. And we should be allowed to assert them before the liability question is settled. I mean, I want to, the, I think there's a very revealing sentence in the district court's opinion discussing the city of Los Angeles, where the court says, as though it were a distinguishing factor, it says the police union in that case, quote, sought to intervene not only out of a desire to be included in the negotiations over the terms of the settlement, but also out of a desire to argue the merits of whether there had actually been any unconstitutional conduct by LAPD officers at all. And, quote, that's exact, that's not a distinguishing factor. That describes exactly what we're doing here. We are trying to intervene before liability is settled so that we can say there was no unconstitutional conduct by our police officers at all. And again, I can understand the finding that there was, but I don't see how we don't have a right to stand up in a courtroom and say we did not do anything wrong. There is no violation of the favor. The city's motion to dismiss does specify there's no history of unconstitutional policing practices at the NYPD. There, the motion attacks both the factual and legal merits of these litigations. So I'm stumbling over adequacy of representation. How did the district court err in saying at this stage where the focus is whether there were unconstitutional practices, doesn't the city have a strong interest in litigating that? The city has a strong interest in litigating it. And I will assume they did a perfectly fine job on this particular motion to dismiss. But the city doesn't have the kind of interest we have, Your Honor. And the test for intervention, as it's been established by the Supreme Court, is much more lenient than that. It doesn't say will the other representative be all right. In the Trubovich case, which we quote in our brief, but I think it's worth mentioning the facts, that was a case by the Secretary of Labor to set aside a union election. And a member of the disgruntled faction of the union wanted to intervene. And the Secretary of Labor said, no, no, no, you don't need me. We don't need you. We'll do a good job. And the United States Supreme Court said, no, because the Secretary of Labor, he has to protect the union members. But he has other interests, too. He has broader interests. Well, Mayor de Blasio sure has broader interests than just protecting the police. He does have a duty to protect the police. But how about the chief of police? The chief of police, no doubt, has a more police-focused interest. But I don't really think it's realistic, Your Honor, to say that the mayor and the police chief are going to take different tax in this case. They're represented by the same council, by the city's council. The decision on how to litigate this case may at some level, it's entirely likely, become a political one. That's not abnormal. Nothing wrong with it. That says the city's a political institution. But we're entitled to, the police officers of the city are entitled to a representative who is single-mindedly devoted to their interests and will present their cause. And I think, just to close on this note, I think it's very important in a case like this that everybody, including the police, gets a fair shake and is perceived to have a fair shake. And I think the way to do that is to grant intervention. Thank you. Good morning. Mackenzie Fillo for the city. This court should affirm. My colleague here has made a great... Which party are you representing? I represent the city. City. All the city defendants. My colleague has made a great case that police officers have a personal opinion about the issues that are, the matters that are at issue in this case. But he has not explained how they have a legally protectable interest. And this court in Floyd already said that they don't. The union does not get to litigate police policies. That is something that is reserved to management. And if this court were to let them litigate... I'm sorry. I mean, if we could imagine that we had a lawsuit where the city had adopted a regulation that affected the police rules of engagement with protesters. And some officers thought that it implicated their safety. Wouldn't they have standing to file the state equivalent of an APA action to challenge it? Perhaps in a, like an article 78 petition. That's what we have in state court. They might be able to... So they would have standing. So that means that they have an interest in what the rules of engagement are that officers have to follow when they deal with protesters. There they would have to show that it was, like, irrational. That would be the standard. Well, I understand. Whether or not they win on the merits, right? The question is whether they have an interest. Sure. But they are dumbing down the standard for intervention so low that every single police officer would have a right to intervene under the standard that they're proposing. Every single police officer has an interest in their own safety. There are 35,000 police officers. We can't have a standard where they could all intervene as of right. Anyone who has an interest in protesting, for example... Well, of course, part of the standards for intervention as of right is whether the interest is adequately represented. And I imagine if the police union were to intervene, then every other individual police officer would, you'd have to say they'd be represented by the union, which is representing the individual police officers, wouldn't you? I would not think so. I mean, officers can have different opinions about things, and they would all basically have a legally protected interest under the standard that my colleague here is proposing. But as to our ability to defend the officer's interest here, it's very clear that the Corporation Counsel's Office has a long history of adequately defending police officers. The PBA points to one comment by the mayor. We have represented the police officers in thousands of cases, hundreds of cases just about protests in particular. They have not cited a single comment a city lawyer has ever made with not a vigorous representation. But you have paid hundreds of millions of dollars in settlement of those cases. Sometimes we settle cases where we think it's... No, I'm just saying, it's not last-ditch defense. And not that it should be. I'm just saying that when you say you defend them, you also recognize misconduct and maybe you pay in nuisance value and you don't necessarily represent the interests of each of the cops. Well, sometimes we do pay nuisance value, but we also, as we cited in our brief, we have, of all the Occupy Wall Street cases, for example, there are dozens if not hundreds of them. Not a single one has resulted in injunctive relief, which is what they are plainly so concerned about. There is no chance that this case results in the city telling police officers that they cannot wear helmets. That is absurd. So are you saying it's impossible that this case could result in a settlement or some kind of an injunction that affects the rules by which the police engage with protesters? Not at all. But the point is that they don't have... We're going to have that kind of a result, right? There's no way it's going to have the absurd result that they are concerned about, which is that they can't wear helmets. Well, maybe it won't be that extreme, but there could very well be an injunction or a settlement that affects the rules by which police engage with protesters. Well, that is speculative at this point, but certainly it is possible, but the union has no right to bargain about... It's speculative, but in Floyd, didn't we fault the police union for failing to move to intervene well in advance of settlement when they thought that their interests might be implicated? That was one basis for the court's ruling, but there was also the separate and completely independent basis that they have no right to move in. Well, no, but I'm just addressing your argument that it's speculative at this point, right? So the court did tell the police union, well, as soon as you saw that it could result in harm to your interests, you should have moved to intervene. And since you waited too long, we're not going to allow you. That was an independent holding in that case. That was an independent holding, along with the one that did. Right. So how can it be that just because it's possible, but it's not yet certain... Didn't we already tell the union, when you can see that it's possible, that's when you should move to intervene? They still need to meet the requirements of the rule for intervention, and they don't do that here. So what's the requirement they haven't met, the interests? They have not shown a legally protectable interest. They talk about a cognizable interest, but what they have to show is that it's legally protectable. And in these cases in Brennan and in Bridgeport Guardians, we said, it's not about your some entitlement to some kind of different job change, it's just whether you have an interest in the transaction or the property that's part of the litigation. I mean, it sounds like you wouldn't disagree that the police at least have an interest in the rules by which they engage with protesters. Sure, they have a personal interest, but the policies for NYPD, for how they police protests, that is reserved under state and local labor law to management. And if this court were to grant them the standing to mitigate it on the same thing as we... If we're talking about a bargaining decision, then maybe management would get to make that decision. But since here we're talking about whether there's an interest for intervening in the litigation, and we've said that that looks like a standing inquiry, and you said a moment ago that it would be true that police officers would have standing to challenge a policy that affected the rules of engagement. That's an interest. Why is that a different analysis than we need to apply? It's very different. Actually, as their reply brief makes clear, what they're really acting as is a lobbying agent for police officers. They specifically cite the American Medical Association and how the AMA files briefs in cases that might affect doctors. So I looked at the briefs that the AMA has filed over the last five years in this court. Every single one was an amicus brief. That's what this court in Floyd invited the PBA to do, is to participate as an amicus, because that is what they are effectively advocating for. Well, can I ask, I mean, you don't deny that there are police officers who are not represented in this litigation, right? Sure. We include 35,000 police officers. And whatever injunctive relief is going to affect the rules by which they engage. I mean, they do have an interest at stake. I would have thought your argument would just be that you were adequately representing it, but it sounds like you don't think that they even have an interest. They have no interest that justifies intervention under the rules of this court and under this court already said. They don't get to decide these things. They just, they have no say in how they police. Employees do not get to decide how to do their jobs. I have another question about the representation of the interest. So we have all of these cases that say that an employer doesn't necessarily represent the interests of employees because they're on the opposite sides of the bargaining table. An employer might act as a stakeholder and not as an advocate for the employees. So why should we think that this is different than that? You know, if the PBA thinks their lawyers are so much better than ours, they are free to convince their members to decline representation from the city. And that would actually be a way around all of this. If they can convince their members, let them represent their members. None of their members have asked them to do it. They ask us to do it because we're good at it. Thank you. Good morning, Your Honors. Philip Levitz for the people of the State of New York. I'll argue on behalf of all the plaintiff appellees this morning. And Josh Moskowitz is also available to address any questions the panel might have, specific to the brief filed by the Sierra plaintiffs. Your Honors, the District Court reasonably exercised discretion in managing this, these complex consolidated cases when it denied the PBA's intervention motion for three principal reasons. First, the PBA has not shown any legally cognizable interest that would be impaired by this litigation. Second, any interest the PBA might have is adequately represented by the existing NYPD defendants. It was effectively admitted in the other side's argument today that the NYPD has a strong interest in defending this case. And third, the District Court has permitted the PBA to renew its motion if circumstances change, such that intervention could be appropriate later. You say if circumstances change, but I'm reading what the District Court said to be that the change in circumstance that it would recognize or that would matter is when the collective bargaining agreement came into play. But that doesn't seem to leave any room for reputational or safety interests. Well, the reputational interests the Floyd Court squarely held are not sufficient to justify intervention. That was just the square holding that applies here. So your position is that what the District Court did was to say that the PBA cannot intervene unless and until its collective bargaining interests are at stake. And when that happens, all it can advocate for is its interests in the collective bargaining contract. The District Court wasn't crystal clear on that. What the District Court was crystal clear on was that if the union believes that the situation has changed based on a relief order that's proposed, relief that's proposed in the case, it can come back to the court and attempt to renew its motion. Is the Attorney General going to seek a monitor? That hasn't been decided yet. This case is in an early stage, and that's part of why it's inappropriate to intervene. There's no clarity about specifically what relief it's going to take. Practically speaking, how can there be any relief useful in this situation without there being a monitor? I mean, the district judge is not going to personally oversee all of the reactions of thousands and thousands of police when they confront hundreds or thousands of protesters. It's certainly possible that a monitor would be relief that the parties agree to, or that is ultimately order. But the point is, this case is at a very early stage where that is not yet clear. And at this early stage, the PBA has, as the District Court, reasonably exercised its discretion to conclude, not demonstrated the kind of legally cognizable that is to say— Can I take a step back for a second? When you said that reputational interests are not— Right? They just said on the record in that case, there was no evidence that the officer's reputation had been impaired, right? It's possible that in this case, we have different evidence. I mean, in this case, there's allegations in some of the complaints that some of the officers were racist or had flashed signs associated with white supremacy. Like, there are more reputational interests at stake, it seems, in this record than there were in that one, no? I don't think that's necessarily true, Your Honor. The basic point is that the situation in Floyd was very similar to the situation here. There were seemingly reputational issues there as well. And, you know, there were a lot of concerns about how this made the police department look, the stop-and-frisk program. But what this Court said in that case is, that sort of thing is too vague, too unspecific, too indirect to justify intervention. Even if we agree as to reputation, I would read the Floyd opinion to suggest that safety concerns stand on a different plane. Is that how you read it? I'm sorry. You're saying you read the Floyd opinion? I would read Floyd as suggesting that there were no safety concerns in the record there, but suggesting that if there had been, safety concerns are a legitimate interest. I actually don't think the Floyd Court specifically addressed that. But the broader point here is there aren't safety concerns at issue in this case, particularly at this early stage. There's absolutely no specificity that the PBA has pointed to, to suggest that officer safety is an issue. You keep saying it's at this early stage, but what about the union's argument that they want to be involved in the proceedings on liability? Isn't it possible that some police practices with respect to protests will be declared to be unlawful and therefore taken off the table before we ever reach questions about how a settlement might be implemented? The point is that at this stage, the District Court reasonably exercised discretion to conclude that the PBA had not shown any such interest, any such legally-cognizant interest. The District Court was focused on the collective bargaining agreement and whether they had the right to bargain over the implementation, right? And said something like, you know, any injunction is only going to adjoin practices that are unconstitutional. But don't parties have an interest in expressing their interest over the determination in the first place as to whether something really is unconstitutional or otherwise unlawful? They may do so if they have a specific legally-cognizable interest, and the PBA doesn't. So what about the question that I posed to the city, which is, you know, if you had a regulation of police engagement with protesters that was proposed, wouldn't the police officers of the union have standing to challenge it if they thought that it was adopted unlawfully? Because it affects how they interact with the public, and it affects their safety. No, I don't think so, unless there was something more specific about the regulation. So there wouldn't even be enough of an interest for standing. You're saying if there was a proposal to alter the way police officers interact with the public, you're saying we, and the officers raised a challenge to that, you'd say we should dismiss for lack of standing because there's no injury, there's no interest at all that's shown. No, I'm saying, Your Honor, that this is a different situation than standing. There's no case law that I'm aware of that says that the standing inquiry is what governs here. There's a four-part standard for determining whether intervention is appropriate. In, I think it's Brennan, where proposed intervenors' interests are otherwise unrepresented in the action, the standard for intervention is no more burdensome than the standing requirement? Brennan was a completely different situation than here. Yeah, but that's a general statement. That's a general statement, right? Okay, the point is that the PBA has not indicated a basis for standing in this case. It hasn't indicated any claim or defense that it has in this case. You know, the point is, everything that the PBA has pointed to is so vague that it's exactly the sort of thing that the Floyd court said is not sufficient to justify intervention. The Floyd court is, the Floyd opinion is the governing precedent that actually matters here. Let me talk about... Yeah, but the Floyd, on this point, you're talking about waiting for a settlement. Didn't the Floyd court expressly fault the union for waiting until a late stage of litigation? And they said, you know, it should have been clear to you well before they started talking about a settlement that your interests were not being represented and you should have intervened then. Right, and in this case, there's no dispute that the PBA did attempt to intervene at an appropriate time. When the PBA determined that it believed it had an interest that needed to be protected in this case, it filed its motion at an appropriate time. There's no dispute that it was timely. Then the district court reviewed that motion at the appropriate time and determined the PBA had not shown a cognizable interest in this case. It was clearly within its discretion in making that determination. The court... The district court was so generous, actually, with the PBA that it also said, well, you know, the case is at an early stage and if at some time later circumstances change such that there's relief proposed that does potentially affect your interest in a new way, you can come back and we'll review this question again. But doesn't that, by definition, mean that the PBA could be heard  And that's when you get to relief. But at the liability stage, what the court determined is the PBA doesn't have a cognizable interest. So yes, they can come back if new relief is proposed and that new relief somehow affects the PBA's interest in a way that the rest of the case hadn't previously. So you're saying the... So your position is that the police officers that the union represents do not have a cognizable interest in what the practices are, like what the policies are that govern police engagement with the public or officer safety. I'm saying police officers, some randomly chosen police officer doesn't have an interest that's cognizable and that's not adequately represented by... Well, let me focus on the cognizable thing. Why isn't it cognizable? It seems to me like if we think about whether somebody's suffering an injury or has an interest in what that policy should be, I would say you meet that test. Why is it a different test? I think as my colleague from the city made clear, I think the kind of test that you're suggesting taken to an extreme would suggest that any police officer could say in any case that potentially affects safety in any way that they can come in and say, I have the standing to be a party in this case. That's just not the way the system works. And there's a good reason for that  on the entire system of litigation. In this case in particular. And in Bridgeport Guardians, there was a lawsuit by minority employees in both of those cases and the non-minority employees were granted intervention status because the change to the seniority rules and other employment policies might've affected their interests. Couldn't you have made the same argument there? Couldn't you have said, you're saying every other employee has standing to intervene as a party. But those cases were different. And that's an extreme result. But isn't that in fact what we said in both of those cases? But what also was the case in both of those cases was that there was specific relief that had been proposed. Well, that's a different point, right? So before we get to that, like the point about just the numeracy of the possible intervenors, that was not an issue in Brennan or Bridgeport Guardians. Let me take the court back to what I think is the key issue here. Even if you don't agree on the cognizable interest point, there are multiple other independent reasons that the PBA cannot intervene in this case. One that you heard about a bit from the city is any interest the PBA might have is being adequately represented by the existing NYPD defendants. And NYPD defendants are- Also in those cases, didn't we say that when an employee who sits across the table during collective bargaining negotiations, their interests are not always represented by the employer. And in fact, employers often act as a stakeholder and not as an advocate for the employees. So why is this different than that circumstance? Because that is true if you're talking about a subject that is within the scope of collective bargaining. What we have here is a situation where nothing that the city is talking about is within the scope of collective bargaining. Collective bargaining deals with terms and conditions of employment. I'm not sure it has to be within the scope of collective bargaining, but even if it were, I mean, don't they have a right to bargain over questions implicating officer safety? No. I understand the statute says the practical import. And so like, you know, the city sets the policies and then they have to bargain over the practical import on officer safety. But does that effectively mean that if there's some rule that's going to implicate officer safety, that there's some bargaining interest or at least there's an arguable bargaining interest, isn't there? We can look at what the Board of Collective Bargaining, the agency that determines the scope of bargaining for city employees, has said about this. And what that agency has specifically said is that demands regarding things like equipment, which the TBA says could be an issue here, but actually are not an issue in this case at this stage, are non-mandatory subjects of bargaining, regardless of whether employee safety is implicated. The point is there is no cognizable interest that the TBA has. So then just to back up, so you're saying that even though it's true that employees and employers might have different interests, because among other things, they sit on opposite sides of the bargaining table, if the subject of the action is not one that is a subject of collective bargaining, then we should say that they do have aligned interests. Does that follow? I'm sorry, Your Honor. So I was suggesting that we have said that employers and employees don't always have... I agree they don't always have the same. But you're suggesting that we should read those cases as only saying that when the interest that's at issue is the subject of collective bargaining. It depends on the circumstances of the case. In this particular case, the TBA has pointed to no reason that... Well, no specific interest at all, frankly, beyond the collective bargaining related interest. And to the extent that it's talking about safety in the context of collective bargaining, what the, again, the Board of Collective Bargaining has said is that sort of thing doesn't create... Isn't a basis for collective bargaining. So if I can just... Excuse me, but we keep talking about collective bargaining, but we're talking generally about the interests of police and the safety considerations that they have. And there are many police in this circuit who are not members of unions. They're members of fraternal order of police, for example. There are a lot of places in which they don't have a lack of bargaining rights. There are a lot of places they have no union or association at all. So it seems to be very restrictive to say that the only legitimate object of concern for individual police is their collective bargaining rights. Well, Your Honors, I'm not quite saying that. What I'm saying, safety certainly could be an interest that is cognizable in certain circumstances. What I'm saying is there is no basis by which the PBA has shown here that officer safety is a cognizable interest in this case. What the district court said in this case is that this interest isn't at stake here because the officers are not allowed to violate the constitutional rights of citizens. That seems to me to be completely in error. It just leaps to the merits of the litigation, which is not how I understand you're supposed to do the intervention analysis. The strength of the claim is ultimately the basis of her decision, rather than an analysis of whether there are safety considerations at issue at this stage. Or am I misreading her? Yeah, I think that's not quite what she was saying. And in fact, the opinion was lengthy and well-reasoned and provided many bases for the conclusion that it came to. And again, I want to emphasize what the standard here is, which is abuse of discretion. The district court is managing a very complicated case with numerous plaintiffs, numerous defendants, numerous lawyers, numerous issues. The different parties are making different claims for relief and different claims for, you know, they have different substantive claims under the law. And the district court said, basically, I'm going to look at this case as a whole. I'm going to consider these factors about the interest, whether the interest is being represented by the city, which I want to bring you back to again, that there's no indication here that the city has not adequately represented all the interests that we're talking about. The city has the same interest in protecting officer safety than anybody else does. And in fact, so does the state. You earlier indicated that there were other independent reasons why you should prevail on this motion. And I'm afraid we have derailed you with questions, but could you address that? Yeah, so we talked about the lack of legally cognizable interest that's impaired by this litigation. We talked about the fact that the city is already adequately representing any potential interest that might be had. A third reason is the district court permitted the PBA to renew its motion if circumstances change such that intervention could be appropriate later. That demonstrates, underscores the reasonableness of the district court's determination here. And then fourth, on the permissive intervention point, which we haven't talked much about, a key consideration is thinking about prejudice to the original parties and the potential for delay. And that's a really important factor in this case, because again, to go back to it, this is a very complicated case already. It has many parties. It has many issues. There's depositions basically going on every day. There's hearings before the magistrate judge every week or two. And what you'd have if you have another party brought into this case pursuing basically collateral issues or repeating the same issues that the NYPD is already representing is you're just going to basically make an already complicated case unnecessarily much more complicated for no reason at all. And what the district court reasonably... You seem to be suggesting that the district judge and the magistrate judge will have trouble controlling the case, but they have extraordinary powers to do just that. And what the district court exercised its powers to do in this case is to determine that there is no basis for the PBA to be in this case at this stage and to delay things and to complicate things further and to move the case forward towards the relief that's needed. And that exercise of discretion, there's just no doubt, was a reasonable one at the absolute minimum. Thank you. Thank you. We'll hear rebuttal. I just briefly on... I want to focus on the adequacy issue, Your Honors. And I'll begin, I think, with Ms. Fellow's parade of horribles that there are going to be all 35,000 individual interveners. I will remind you that in the United States Supreme Court held that a guy named Trilovich was entitled to intervene even though the Secretary of Labor was protecting his interests because they said there was a division of interest there. There are cases that take a less liberal view on the adequacy issue than Trilovich does, but none of them is in the labor area as Trilovich was. None of them is a labor management case. Every labor case on the adequacy issue that I've seen, the intervener prevailed. I haven't seen one where a court said, oh, no, don't worry. You can be represented by your employer. You can be represented by the government. When there's a working stiff, whether it's a Trilovich or a whole union, the tendency is to let them in. And among those cases, I include Floyd. Floyd did not reach, I grant you, did not reach the adequacy issue. But I think it's pretty clear from the court's opinion in Floyd that if they had reached it on that one, we would have won. The union would have won because the union was saying, oh, you can't have asked us to intervene earlier. We thought the city was taking care of us. And the court said, well, you should not have thought the city was taking care of you. You're no better than that. It's an inherently adversarial relationship. And you should have been in there the first day protecting your own interests. And I think it follows from that that we have a very strong case on adequacy here. I will talk very briefly about the so-called potential for duplication and delay. I'm tempted to say I'm not sure how well counsel knows Judge McMahon. But I'm not going to be duplicative. I'm not going to delay anything. And if I do, I will, if I try, I will not succeed. Thank you. Thank you all. And we'll take the matter under advisement. Again, well-argued case.